LEWIS, J,,
concurring in result..
I agree with the conclusion reached by the majority that section 440.15(2)(a) is unconstitutional as applied to Bradley Westphal. Valiant judicial attempts to salvage the statute notwithstanding, the statutory gap that resulted from the limitations in section 440.16(2)(a) is a plain denial of the right of access to courts guaranteed by th,e .Constitution of this State to Floridians who, after 104 weeks, may still be totally disabled due to injuries received in the course of their employment.
.’However, at this point in time, I conclude that the remedy relied upon by the majority is insufficient. Statutory revival of the 1994 limitation, which provides for the administration of temporary'total disability for 260 weeks; may provide relief for those individuals who remain totally disabled but have not been deemed permanently disabled at the end of 104 weeks. However, this remedy simply moves the goalposts without eliminating the unconstitutional statutory gap that will still persist for those who remain totally — but not permanently — disabled after 260 weeks. Therefore, I do not believe that this is a situation in which statutory revival is appropriate. Cf. B.H. v. State, 645 So.2d 987, 995 (Fla.1994) (“[T]he judicial act of striking the-new statutory language automatically revives the predecessor unless it, too, would be unconstitutional" (emphasis added)). In my opinion, the only appropriate remedy would be to require the Legislature to provide a comprehensive, constitutional Workers’ Compensation scheme, rather than rely on the courts to rewrite existing law or revive prior law. I believe that the remedy provided today fails to fully address the problems with the Workers’ Compensation scheme because it will still leave some injured Florida workers without access to benefits to which they are entitled. Thus, the majority decision leaves Florida workers in an.only marginally better position than they were in prior to this matter by failing to address and remove the inadequate alternative remedy, thereby leaving the Workers’ Compensation scheme unconstitutional and in need of major reform. As I see it, such a system is fundamentally unconstitutional and in need of legislative — not judicial — reform.
Over time, the Florida judiciary has repeatedly rewritten provisions of the Workers’ Compensation law to avoid a declaration of unconstitutionality. No fair-minded individual who reads these decisions can reasonably conclude that they involve simple statutory interpretation. See, e.g., Newton v. McCotter Motors, Inc., 475 So.2d 230) 231-32 (Fla.1985) (Ehrlich, J., dissenting) (disagreeing with the holding that section 440,16(1), which provides that for a death to be compensable under the Workers’ Compensation law, it “must result within one year of the accident or must follow continuous disability and must result from the accident within five years of the accident,” see id. at 230, and does not violate access to courts for deaths that occur more than five years after the accident; noting that “[bjenefits paid during the life of the worker ,cannot, and never were intended by the legislature to, substitute as a reasonable alternative for a cause of action for wrongful death”); Rhaney v. Dobbs House, Inc., 415 So.2d 1277, 1279 (Fla. 1st DCA 1982) (upholding statutory provision that the American Medical Association Guides to the Evaluation of Permanent Impairment shall be used to determine permanent impairment until a permanent schedule is adopted; noting that “[although the provisions of § 440.15(3)(a)3. are not unconstitutional *329 per se, they could be unconstitutional in their application if this section were interpreted to mean that there could be no permanent impairment ■ unless a medical doctor testified from the AMA Guides as to a certain percentage of permanent impairment set forth therein. However, the section should not be interpreted in that fashion.”).[6] I have a full appreciation for the judicial attempts to save the Workers’ Compensation statute from total disaster. Florida needs a valid Workers’ Compensation program, but the charade is over. Enough is enough, and Florida workers deserve better. •
The judicial rewriting of a problematic statute is no more evident than in the present case where section 440.15 has been rewritten not once, bút twice. See Westphal, 122 So.3d at 444 (avoiding a constitutional challenge by holding that under section 440.15(2)(a), “an injured worker-who is still totally disabled at the end of- 'his or her eligibility for temporary disability benefits is deemed to be-at maximum medical improvement as a matter of law, even if the worker may get well enough someday to return to work”); City of Pensacola Firefighters v. Oswald, 710 So.2d 95, 98 (Fla. 1st DCA 1998) (bridging the unconstitutional gap by holding that to be eligible for permanent total disability benefits, “an employee whose temporary benefits have run out — or are expected to do so imminently — must be able to show not only total disability upon the cessation of temporary benefits but also that total disability will be ‘existing after the date of maximum medical improvement’ ”); see also Matrix Emp. Leasing, Inc. v. Hadley, 78 So.3d 621, 632 (Fla. 1st DCA 2011) (Van Nortwick, J., dissenting) (“[B]oth the approach adopted in Oswald (and reaffirmed by the majority opinion) and the approach expressed in the dissent are judicial ‘patches’ crafted to attempt to avoid a material ‘gap’ in disability benefits for injured workers who remain totally disabled on the expiration of temporary disability benefits. In my view, our concern with this potential ‘gap’ is not simply a humanitarian concern for particular claimants, but is based on our interest in avoiding a potential constitutional issue.”). Although 'both rewrites of section- 440.15 may have been good faith attempts to protect injured workers, neither cures the underlying invalidity of the statute.[7] One need only consider the multiple opinions in this case to -understand the essential problem.
The truth of the matter is that section 440.15 is hopelessly broken and cannot be constitutionally salvaged. The judicial branch must terminate the practice of rewriting the' statute. Under the plain lan-guáge of the statute, many hardworking Floridians who become injured in the course of employment are denied the benefits necessary to pay their bills and survive on a day-to-day basis.[8]. The inequitable *330 impact of this statute is patent because it provides permanent total disability benefits to the disabled worker who reaches maximum medical improvement quickly, but arbitrarily and indefinitely terminates benefits to other disabled workers — i.e., until the employee proves that he or she is permanently and totally disabled once maximum medical improvement is attained, even where there is no dispute that the employee is totally disabled at the time the temporary benefits expire, and even if maximum medical improvement will occur in the future. Where totally disabled workers can be routinely denied benefits for an indefinite period of time, and have no alternative remedy to seek compensation for their injuries, something is drastically, fundamentally, and constitutionally wrong with the statutory scheme. See Kluger v. White, 281 So.2d 1, 4 (Fla.1973) (“[W]here a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla. Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries.”).
The reality is that Workers’ Compensation benefits have been steadily chipped away and reduced by the Legislature to such an extent that intelligent, able jurists have now concluded enough is enough and declared the entire statutory scheme unconstitutional. See Cortes v. Velda Farms, No. 11-13661-CA-25, 2014 WL 6685226 at *10 (11th Cir.Ct. Aug. 13, 2014) (“As a matter of law, Chapter 440, effective October 1, 2003[,] is facially unconstitutional as long as it contains § 440.11 as an exclusive replacement remedy.”), overruled for mootness and lack of standing by State v. Fla. Workers’ Advocates, 167 So.3d 500 (Fla. 3d DCA 2015). Although the majority opinion does not take this step, it too has recognized that Workers’ Compensation benefits have been steadily eroded. Majority op. at 324. I submit that the time has come for this Court to uphold its sacred and constitutional duty and simply apply the words of the Legislature. In lieu of continuing to uphold the Workers’ Compensation law with rewrites, judicial patches, and flawed analyses, Chapter 440 should be invalidated where defective and the Legislature required to provide a valid, comprehensive program.
Florida families presume that when they report to work every day and perform their duties with dedication and diligence, a valid Workers’ Compensation program will be in place should they ever become injured on the job and be precluded from seeking access to our courts. Indeed, the Workers’ Compensation law was, at least initially, created to deliver adequate, fair, and prompt disability benefits to injured workers and balance workers’ rights with business interests. However, section 440.15 — both under its plain meaning, and as interpreted by the majority today— denies that critical safety net to the most seriously injured by hinging the award of permanent total disability benefits upon the attainment of maximum medical improvement, which cannot occur until a future date, but eliminates benefits until that future date arrives. I cannot vote to uphold this statute, or the interpretation of this statute, that denies such fundamental rights to the hardworking citizens of this *331 State. It is time that both business interests and workers receive a valid, balanced program that can operate as Florida moves.into its economic future.
Accordingly, I concur in result.

.This Court has also held that the invalidation of a comprehensive revision to the Workers’ Compensation law for a single-subject violation should operate prospectively to avoid "the substantial impact on the entire workers’ compensation system if we were to hold [the chapter law] void ab initio.” Martinez v. Scanlan, 582 So.2d 1167, 1176 (Fla.1991). But see id. at 1177 (Barkett, J., concurring in part and dissenting in part) ("I do not believe it is the function of the judiciary to suspend constitutional principles to accom-' modate administrative convenience.”). •

. Further, it is not the role of the judiciary to rewrite a problematic statute. See Brown v. State, 358 So.2d 16, 20 (Fla.1978) ("When the subject statute in ho way suggests a saving construction, we will not abandon judicial restraint and effectively rewrite the enactment.”).

. Moreover, there is no way to determine how many of these injured ¿nd disabled workers actually exist. Many may choose to suffer in silence rather than fight a system that is so obviously and drastically skewed against *330 them. Thus, the number of disabled workers who are entitled to permanent total disability benefits — but cannot receive them because they have not yet reached maximum medical improvement — may be larger than anyone knows.